GEORGE N. FLETCHER ET AL. v. THE TOWNSHIP OF ALCONA.

*Taxes—Assessment of standing timber—Real estate.*

1. The ownership of standing, growing timber is an interest in the land itself, and assessable as realty. Cooley, Tax'n (2d ed.), 366–368; *People v. Commissioners*, 82 N. Y. 462.

2. Standing, growing trees are not "forest products," within the meaning of section 11, subd. 4, of the tax law of 1885.

3. Standing timber, reserved on a sale and conveyance of land, is not assessable as personal property, but the land should be assessed at its true cash value, which should include said timber.

Error to Alcona. (Tuttle, J.) Argued June 28, 1888. Decided October 19, 1888.

*Assumpsit* for taxes paid under protest. Defendant brings error. Affirmed. The facts are fully stated in the opinion.

*W. E. Depew,* for appellant.

*Frank Emerick,* for plaintiffs.

[The points of counsel are fully stated in the opinion. —REPORTER.]

LONG, J. The plaintiffs are copartners, carrying on the lumbering and saw-milling business at Alpena, under the firm name of Fletcher, Pack & Co. Prior to November 7, 1885, they had owned for a number of years lands situate in townships 28 N., of range 6 E., and 28 N., of range 7 E., in the county of Alcona, Mich., and township 29 N., of range 2 E., Montmorency county, Mich. On that date, in pursuance of previous negotiations, they

deeded the lands in said townships to the firm of Snow & Huber, of Marion county, Iowa. .

The lands lying in Alcona county comprised 28 distinct government 40's, containing about 1,120 acres, and were wild and unoccupied. This deed reserved to Fletcher, Pack & Co. all the pine timber then standing on these lands. It was recorded in the office of the register of deeds of Alcona county, March 20, 1886, and the supervisor had constructive and actual notice of the deed and its recording from plats and abstracts furnished him by the register of deeds at the time he made his assessment roll for 1886.

Three parcels of this land were assessed by the supervisor to Fletcher, Pack & Co., and the remainder to Snow & Huber. The taxes upon these three parcels amounted to $189.19. The supervisor also assessed to Fletcher, Pack & Co. the pine timber standing upon the lands deeded to Snow & Huber, at a valuation of $25,280. It was assessed as personal property, and upon the part of the roll devoted entirely to the assessment of personal property, and separate from any assessment of real property. The assessment of real and personal property were made upon different parts of the roll, and were kept entirely separate. The amount of the tax levied upon this assessment was $797.61.

The plaintiffs declined to pay these two items assessed to them, viz., the sum of $189.19, assessed upon three parcels of land included in the deed to Snow & Huber; also the sum of $797.61, levied upon the pine timber reserved by them in said deed.

On January 31, 1887, the treasurer of the defendant, with the tax-roll of the township and his warrant thereto attached in his possession, seized by virtue thereof a locomotive and train loaded with logs, to satisfy this among other taxes assessed against the plaintiffs for the year

1886. To procure the release of this property the plaintiffs paid the tax under protest. This action was brought to recover from the township the amount of taxes so paid.

On the trial the right of the plaintiffs to recover the sum assessed upon the three parcels deeded to Snow & Huber, upon the ground they were not owned or occupied by the plaintiffs at the time of the assessment, was not controverted by counsel of defendant, and it is not controverted here.

As to the taxes levied upon the assessment of $25,280 upon the pine timber reserved by plaintiffs, as personal property, the ground of plaintiffs' claim to recover taken upon the trial was that that sum was a fraudulent overvaluation of this timber, and considerable evidence was taken tending to show this fact. It was shown that for a number of years prior to 1886, and while Fletcher, Pack & Co. owned these lands, and also the same pine timber standing thereon. the highest aggregate assessment of all these lands was about $11,000. But after this deed was made the land itself was assessed as real estate, and the pine timber standing thereon was assessed to the amount of $25,280 as personalty. This part of the case becomes entirely unimportant under the ruling of the court upon another claim made by the plaintiffs in relation to the assessment of this timber. Plaintiffs' claim was that, as personalty, this timber was not assessable in Alcona township at all.

It is undisputed that plaintiffs were copartners carrying on a large lumbering and saw-milling business at Alpena; that their business was principally carried on there; that they had their headquarters there; and that two of the partners resided there, the other residing in Detroit. It was also shown and was undisputed that at the time the assessment was made for the year in question,

to wit, on the second Monday of April, this firm did not hire or occupy any store, mill. office, or any of the places of business or use in this township, required by section 11 of the tax law of 1885, to legalize the assessment of personal property in the township other than where the person resides, or a firm has its principal place of business.

Defendant's counsel, admitting these facts, and the legal conclusion therefrom that, under the tax law, this timber could not be assessed to plaintiffs under the general rule in reference to personal property, claims that this timber was a forest product, and comes within the fourth subdivision of section 11 of said act, and was assessed properly in said township of Alcona. The court held this standing timber was not a forest product, and further held, the facts being undisputed, that plaintiffs were also entitled to recover the amount of this tax.

Judgment and verdict passed for the plaintiffs for the amount of the tax, and the defendant brings the case to this Court on writ of error.

The reservation contained in the deed from Fletcher, Pack & Co. to Snow & Huber is as follows:

"Reserving all pine and hemlock timber and the right of way to remove the same, and the exclusive use of all landings on streams, flowage for dams, timbers for building log road, camps, skidways, and logging railroad, across said land."

The tax law of 1885 (Act No. 153, Laws of 1885) provides:

"SECTION 1. That all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation.

"SEC. 2. For the purpose of taxation, real property shall include all lands within the State, and all buildings and fixtures thereon, and appurtenances thereto, except. in cases otherwise expressly provided by law; personal prop-

erty shall include all goods and chattels within the State, all ships, boats," etc.

Section 5 provides:

"A copartnership shall be deemed to reside in the township where its business is principally carried on"; and that "copartnership shall be treated as an individual, and whenever the name of the owner or occupant of property is required to be entered upon the assessment roll, * * * the firm name shall be used."

Section 6 provides:

"Real property shall be assessed in the place where situated, and to the owner, if known; if not, then to the occupant, if any; and, if there be no occupant, then as 'unknown.'"

Section 10 provides:

"All personal property, except as hereinafter provided, shall be assessed to the owner in the township of which he is an inhabitant, on the second Monday of April of the year for which the assessment is made."

Of the excepted case subdivision 4 of section 11 provides:

"Personal property of non-residents of the State, and all forest products owned by residents or non-residents, shall be assessed to the owner or to the person having control thereof in the township or ward where the same may be, except that, where such property is in transit to some place within the State, it shall be assessed in such place," etc.

It is insisted upon the argument here by counsel for the plaintiffs that under our statute this timber should have been assessed as real property.

The tax could not legally be assessed to the plaintiffs as personalty in the township of Alcona. The firm is composed of three partners, two of whom reside in Alpena, and one in the city of Detroit, and not in the township or county of Alcona. Their principal place of business is at Alpena; and section 5 of the act provides that, for the

purpose of assessing property and collecting taxes, a
copartnership shall be treated as an individual, and shall
be deemed to reside in the township where its business is
principally carried on.

Section 10 fixes the place of assessment and collection
of personal taxes as in the township of which the owner
is an inhabitant, on the second Monday of April of the
year for which the assessment is made, except in certain
cases specified in the act. This class of property does not
come within the excepted cases. It cannot be treated as
"forest products," and brought within subdivision 4 of
section 11. The property is standing, growing trees. It
is not severed. The exceptions in subdivision 4 of sec-
tion 11 were meant to and do include such property as
logs, lumber, timber, poles, ties, etc., produced from the
forest, and not these things while standing and growing
on the land. There is no authority under the tax law to
assess this class of property as personal. It is a part of
the realty, and should be assessed as such.

Section 2 of the act above quoted provides:

" For the purpose of taxation, real property shall include
all lands within the State, and all buildings and fixtures
thereon, and appurtenances thereto, except in cases other-
wise expressly provided by law."

It cannot affect the question that the title in fee to the
land is in one person, and the buildings or other fixtures and
appurtenances are in another. These buildings, fixtures,
and appurtenances are a part and parcel of the realty.
The ownership of timber standing and growing on land
is an interest in the land itself, and, under this statute,
assessable as realty. Cooley, Tax'n (2d ed.), 366–368;
*People v. Commissioners,* 82 N. Y. 462.

This assessment was placed on a part of the roll devoted
entirely to the assessment of personal property, and sep-
arate from any assessment of real property. This timber,

standing and growing upon these lands, for the purposes of assessment and collection of taxes, was real property, and no valid charge could be created against the plaintiffs or lien acquired specifically upon the property by assessing it as personal.

The methods provided by our system of tax laws for the assessment of property and collection of taxes upon real and personal property are very different. In the assessment of real property the owner is entitled to a specific description of the property, and an assessment by distinct parcels and separate valuations. In making such assessment, it is the duty of the supervisor to estimate the true cash value of every parcel of real estate, and it is only where two or more parcels are used and occupied together that they may be assessed by one valuation. And, in assessing, the statute requires it to be described either as a government subdivision, a lot or block, or by its boundaries, and each description to show the number of acres it contains, and the taxes are made a lien upon the property. The tax-payer is given, by the statute, the privilege of paying upon any one parcel, and when the lands are returned for non-payment of taxes the tax-payer may pay upon any parcel returned, and if the lands are sold for the taxes, may redeem any parcel.

Here one valuation is placed upon this property, by the supervisor, of $2,280 as personalty. The property assessed is in fact a part of the realty. This realty is severed in location by long distances. The tax cannot be upheld. These lands should be assessed in parcels at their true cash value to the owner or occupant, and there should be included in such values all the buildings and fixtures and timber thereon, and appurtenances thereto. The tax is on the land, and includes the whole estate. If the land is sold for the tax, the deed conveys the land therein

described, and is *prima facie* evidence of title in the purchaser.

The fact that the court gave a wrong reason for holding the tax invalid cannot aid the defendant. The tax was illegally assessed, and plaintiffs, having paid it under protest, have a right to recover it back.

The judgment of the court below must be affirmed, with costs.

The other Justices concurred.